The first case today is 13-2068 United States v. Kent Awer Good morning, your honors. May it please the court, Arza Feldman, as attorney for the appellant Kent Awer, I would like to reserve four minutes for rebuttal. How many? Four minutes. How about three? Three minutes. Okay. That's fine. This case presents a unique set of facts that falls into a rare class of cases. Counsel, can you bring the microphone just a little closer to you? Certainly. Thank you. It falls into a rare class of cases that cuts to the criminal defense of any defendant, namely that someone else has taken responsibility for the crime for which the defendant is charged. The district court, though it accepted this defense and did allow some evidence, it greatly limited the presentation of the defense and how defense counsel wished to present it, and thereby took the heart and soul out of the defense. Counsel, if this case, as I recall, the trial court held that that evidence would be cumulative. Is that correct? It held that it would be cumulative and that it would not, the additional testimony by the counsel for the deceased co-defendant, she's not a co-defendant anymore, but the deceased, would not be probative. And it's our position that that was erroneous. Well, it would not be probative because it was cumulative and therefore not necessary. That's what Judge Smith said in his ruling. Correct. But it would not have been cumulative because for several reasons. First of all, we had two separate attorneys, seasoned defense criminal defendants attorneys, who were going to testify as to what the decedent told them in a presentation to a jury. Certainly, if the court looks at the testimony that was given at the eliminate hearing by both of the attorneys, this was very compelling testimony. Well, it may have been compelling, counsel, but even in your reply brief on page three, you acknowledge that the testimony of what was given and the testimony of the attorneys was going to be almost indistinguishable. I don't believe that. I think that's on page three. If you'll look at my reply brief, I don't believe that. In fact, I believe that it was. Well, I may have misread it, too. That's always a possibility. Page three, we were talking. In addition to that, the district court ruled that because it was a statement made to two attorneys, it wasn't a declaration against penal interest. Correct. And to the extent that I agree with you, that the privilege was waived. It wasn't argued before the district court. That the privilege was waived. Yes, that didn't surface until you guys were here on appeal. But the court did allow the written statement in. And I think that in doing so, I think the court recognized that the defense existed. That there was certainly the right to present this defense. The problem was that the testimony of the attorneys, even at the eliminate hearing, was very detailed. Especially to the second attorney, Judith Crowell, who testified about how many times the defendant, the decedent, had told her that Kent Auer had nothing to do with this. And the fact that she explained that she put the bag in the trunk without his knowledge. There was no real evidence, physical evidence, linking him to the drugs. There was no fingerprints taken. There was nothing to link him. But the jury was told that, weren't they, counsel? The testimony came in that said that not his drugs, they were my drugs. They had nothing to do with that. Well, it wasn't testimony. It was a statement. It was a short statement that she gave. But the jury heard it. Yeah, it was a short statement signed and notarized. Yes, that the jury got to read. But that's very different than testimony of live individuals who could explain her demeanor when she said it. The other inmate testified, right? What? The other inmate and the prison official were allowed to testify. Isn't that correct? Yes, as to the circumstances. But I would dispute also that this testimony, the statements to counsel, was privileged because she directed her attorneys to tell everybody. Judith Crowell testified that she asked her. This was the foremost thing on her mind. But that argument wasn't made in the district court. In the district court, it was conceded that 804b3 didn't apply to the statements made to the attorneys, and the issue was whether 807 applied. Correct. So, therefore, you can't switch horses and argue to us a ground that you disclaimed before the district court. I understand that. However, it's still, if you look at 807, the judge in his decision found that out of the four pronged tests, that three of the prongs were met. His point was that prong three was not met, that it was not probative, because it wasn't the best evidence of her assertions, and that it was merely cumulative. But the best evidence rule doesn't really apply here. No, he didn't invoke the best evidence rule. He used the phrase best evidence, but that's a common phrase. The case law says that that prong of the test means that the evidence shouldn't be allowed unless it's necessary. So what Judge Smith says, whether he's right or wrong, is the jury is going to see the substance of this in writing, notarized, from Ms. Johnson. It's not necessary that they hear it again from the attorneys. And I've got a further question. You had available, but didn't attempt to put in, statements that Johnson had made to other inmates, which would have come in without regard to Rule 807. Why weren't those offered? I don't know. I was not the trial counsel. Well, yeah, but the fact that you're not the trial counsel, you can't use that as an excuse up here. You're representing the defendant. And the fact is, if the defendant had other available evidence of the point, which he, through counsel, chose not to offer, that's a factor that Judge Smith is entitled to consider in the 807 calculus, isn't it? Yes. But I would think that he believed, trial counsel believed, that the testimony of the two attorneys was certainly of greater value to the defendant. Not if you can't get it into evidence, it's not of greater value. I understand. But I'm not so sure that it should have been excluded. That's our argument. But the defendant can't use Rule 807 as a means to get into evidence, something that's not otherwise eligible to get into evidence, just because he thinks that that might be a more dramatic way to do it than other perfectly competent evidence that she chooses not to offer. And so I'm struggling with the notion. Here you've got the notarized statement. You've got available the testimony of other inmates, which you choose not to offer. And instead you ask the judge to invoke this sparingly used residual exception and let this evidence in under Rule 807. That's correct. And, again, I would indicate that that strategy was likely used because counsel believed that it was so compelling to have these two attorneys who spoke to the decedent on innumerable occasions, and this was foremost in her mind. And certainly their testimony was very different than what the defendant told the inmates because what she told Judith Crowell was, number one, that she was very distressed, number two, that she actually put the drugs in the trunk, number three, that she did not tell Kent Auer about it or the other party, and she repeated this six to eight times. So I think that that testimony was also very different than what was told to inmates early on during her incarceration because I don't think that she even indicated to the inmates in great detail what exactly her role in this crime was. How do we know that? Because of what she told the one inmate and what she also put in her statement early on. It wasn't as detailed. But is there any offer of proof or any that shows what she told the other inmates? No. I mean, the argument is made in the district court papers, and, again, in your brief, the statements are made that she admitted her guilt and her ownership of the drugs to the other inmates, but I couldn't find anything in the record that gives us any detail about that, any offer of proof or anything of that sort. Correct, and I believe that that's because there was no detail and there was no access. How can we assume that? How can we assume anything about an offer of proof that wasn't made? Obviously, you can't assume, but I would think that an inference could be drawn based on the other things that were said at the commencement of her incarceration to the other inmate and in her statement, which were much less detailed. And I presume that in her interview with counsel, counsel asked her many more questions, and that's how she obtained the information, because she was trying to establish a defense and she had a attorney-client conversation with her client in which she, as an attorney, knew all of the information that needed to be gathered rather than what Johnson likely said to other people. And, again, it's an inference. I can see that that's an inference that I'm making, but I'm making that inference based on what she said to other people at around the same time. Your Honors, as to the remaining points in the brief, unless Your Honors have any questions, I'll conclude my argument at this time. Thank you very much. Good morning. Donald Lockhart for the government. It's important to point out, as a threshold matter, that there are actually two written statements. There is the short, notarized statement quoted at page 15 of our brief in full, and then there's a much more detailed written statement of Dianiqua Johnson quoted on page 16 of our brief. And if you look at those two statements in tandem, what you see is that, in her very own words, she gave virtually all the details that you can imagine concerning how this cocaine, according to her, came to be placed in the car and how both Mr. Awer and the other passenger were completely ignorant of it. But isn't there something particularly compelling about the fact that so shortly after her arrest, she told her own attorneys the story? Doesn't that give those particular statements to her attorneys both a certain patina of credibility, and also don't the circumstances surrounding those statements, which aren't covered in the written statements, aren't they themselves probative? Well, I would say that the timing of the statements to the attorneys does go to their trustworthiness, but we're dealing with not just trustworthiness. That's one prong of the rule. We're dealing with the prong which says the evidence has to be uniquely probative, not just probative, strongly probative, but somehow really almost transcendently uniquely probative and necessary. And so it's one thing to say that, well, because she told the attorneys this story right off the bat, the statements have an aura of trustworthiness, and the district court so frowned. In fact, the district court used those oral statements to the attorneys as part of its finding on the written statements to say that they were consistent with them and therefore indicated the trustworthiness of the written statements. And it was partially on that basis that the district court allowed in those written statements. But it's one thing to say that the oral statements were trustworthy. It's quite another thing to say that they have this transcendent relevance required by Rule 807. And here we submit that if you look at the testimony of these two attorneys at the evidentiary hearing, what you see is some fairly conclusory statements, some of which we actually quote on page 17 of our brief. For example, she said the drugs were hers. She said she felt badly that Mr. Awer was implicated. She said the drugs were hers and hers alone. She told me she put the bag in the trunk before they left New York. If you compare those statements to the written statements, there's really no comparison at all. The written statements are just far more detailed, and making them more convincing is the fact that they're coming out of this woman's very mouth. It's not the attorneys remembering what they think she told her, what she told them back in 2006. It's Dianiqua Johnson writing these statements in her own words. And I would note the first of the statements was written according to the date on it, 25th of June 2006. So we're talking less than two months after the traffic stop that led to the case. In addition, the district court judge allowed two witnesses to testify on the surrounding circumstances. You have the prison official who testifies that Dianiqua Johnson came before him and made this statement. That is extremely helpful for the defense. It helps put a face on this woman and to make clear to the jury that the statement is actually hers. Second, and perhaps more importantly, you have the testimony of the fellow inmate who says two important things. Number one, that Dianiqua Johnson was distressed over Ken Awer's situation. Now remember, one of the things that the defense wanted to elicit from the attorneys was this statement that she was distressed over Awer's situation. Well, that very statement about distress came out through the inmate who said, yes, she told me she was upset about the predicament that Awer found himself in. Mr. Lockhart, the court in part ruled that the testimony by the attorneys would be cumulative. But it's cumulative because the judge allowed the other evidence as opposed to this. Who has the right to make a determination as to which evidence should be allowed? If the attorneys had testified, then maybe it would have been okay to say, no, the officer and the inmate couldn't testify. But who gets to make a decision? Well, I would say that as an initial matter, that decision sort of rests in the strategic judgment of the defense attorney. And here what the defense attorney decided, and it's clear from the procedural sequence, was that the written statements were what it wanted most. In fact, the first motion was for the written statements to be admitted. And then as Judge Smith points out in his ruling, it was only later that the defense moved to expand that motion to include the oral statements to the attorneys. So you can see from the progression that what the defense wanted most was these written statements for the obvious reason that they're the best evidence of what she would have had to say. And then only later did they say, well, we'd also like the statements made to the attorneys. Now, if the defense attorney had, I suppose, elected in the district court and said, you know, judge, we've changed our mind. We would rather go with these statements made to the attorneys, there would have been a Rule 804 issue there that would have hampered the defense's ability to get those statements in. But at the end of the day, perhaps the judge might have said, well, okay, then. We'll let you get in the statements to the attorneys, and the written statements will be by the boards because they'll be cumulative. But it seems to me that the defense attorneys have some control over how that is going to happen. Mr. Lockhart, I'm not sure I understand the point you're making. But are you suggesting that Rule 807 is available even if there is other evidence available to the defense that proves the same point, which is clearly admissible, but which the defense chooses not to proffer? No, not at all, Your Honor. So if you've got evidence admissible under 804b3, and the 807 evidence, proffered 807 evidence, is really cumulative, then it can't be uniquely probative. So it's really not defense attorney's choice. It really depends on the facts of the case. Well, it may, but the defense attorneys certainly have some control in how that evidentiary posture is being set up. And here, whatever else is clear is that the defense itself chose to play it the way they did. So the question is sort of academic in a way because it was the defense that went forward with this as their lead issue. So, no, I didn't mean to suggest that at all, Your Honor. Now, if there are no further questions about that, I'd only note that in addition to everything that's been said... Well, excuse me, I do have one other question about that. You mentioned that a prison official and one of the defendant's fellow inmates were permitted to testify. My understanding is that the fellow inmate who testified was not asked what evidence was available to the defense. The declarant told her about the ownership of the drugs? Yeah, that's right. So it's important, and you're exactly right, to point out that the inmate was allowed to testify on the sort of background of the fact that she, the inmate, encouraged Dianiqua Johnson to write the first notarized statement. And number two, the inmate was permitted to testify that Dianiqua Johnson said she was distressed over AWIR's situation. And number three, she was allowed to testify that from her standpoint, Dianiqua Johnson was an honest person. So there are really three main categories of evidence that she testified to. She did not testify to the statements that Dianiqua Johnson made to her that presumably paralleled the statements that she wrote. And why was that? Was there a ruling to that? No, because remember, the defense attorney never sought to introduce those statements. So the sequence of events is motion to admit written statements. That motion is then expanded to include the oral statements to the attorneys. And although there is mention made, peripherally, of statements made to the inmates, two of them actually, not just the one who testified, the defense never ever moves to admit those statements. So even though the defendant has this fellow inmate on the stand, there's never an attempt made to elucidate from her what the declarant said. And there's no evidence that the declarant might have told her about the ownership of the drug. That is correct. In addition, there's a harmless error argument. We'll rest on our brief for that. And we'll rest on our brief for the remaining issues unless there are questions. So the question is not that the question wasn't asked because the court had made a ruling that this was the limit, the parameter of what would be admissible. They just didn't ask it. Right, because the defense never sought to introduce those statements. But you don't have to seek ahead of time to introduce everything. You can just wait until trial and ask it and see if it's part of an objection. Possibly, but remember, we're talking, yeah, that's true, but it just didn't happen is the bottom line. In other words, yes, conceivably, the defense might have attempted to elicit it at trial for the first time from the inmate without having previously moved in limine. I think the judge would have been a little taken aback about that given that he had spent so much time on the other evidentiary issues, you know, why didn't you raise this before. But yes, in theory, it might have been done, but it wasn't done. There was no question put to the inmate, as far as I can recall, about the statements. The testimony all went to the background and to the other issues. Thank you. Your Honor, I'd just like to comment for a moment on the counsel's claim that the evidence was not necessary or didn't have transcendent relevance. This case turned to a great deal on credibility. We had testimony from police officers that alleged that the defendant made some admissions to them and their credibility was greatly at stake and contested. And certainly the issue as to whether or not these drugs belonged to Ms. Johnson or Mr. Awer had anything to do with it was also a matter of great credibility. And when you're talking about presenting inmates to testify versus attorneys who are told this and have the ability to consider the demeanor and the credibility of their own client, and are trained to do so, and have them testify instead of an inmate, that certainly that is greatly, I would say, contested. Thank you very much.